SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

Lenard Degaetano,

*Plaintiff,*

-against-

Our Lady of Perpetual Help Parish and Our
Lady of Perpetual Help Church,

*Defendants.*

Index No.:
Date Index No. Purchased:

*Plaintiff designates as the place of trial:*

COUNTY OF SUFFOLK

The basis of venue is:
*One or more Defendants reside in this
county, and a substantial part of the events
giving rise to the claim occurred in this
county*

**Summons**

***To the above named Defendants*:**

> **You are hereby summoned** to answer the Complaint in this action and to serve a copy of your
Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance, on
the Plaintiff's Attorney(s) within twenty (20) days after the service of this Summons, exclusive of the
day of service (or within 30 days after the service is complete if this Summons is not personally
delivered to you within the State of New York); and in case of your failure to Appear or Answer,
Judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: July 20, 2021
        New York, New York

_____
Jerry Kristal, Esq.
WEITZ & LUXENBERG, P.C.
**Attorneys for Plaintiff**
700 Broadway
New York, New York 10003
(856) 406-3999
(646) 293-4969 – fax

To:     Our Lady of Perpetual Help Parish
        210 S. Wellwood Ave.
        Lindenhurst, NY 11757

        Our Lady of Perpetual Help Church
        210 S Wellwood Ave.
        Lindenhurst, NY 11757

1

Case 2:23-cv-05109-GRB-AYS Document 1-1 Filed 07/05/23 Page 2 of 26 PageID #: 7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

Lenard Degaetano,

Plaintiff,

v.

Our Lady of Perpetual Help Parish and Our
Lady of Perpetual Help Church,

Defendants.

Index No.
**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Lenard Degaetano, by Plaintiff's attorneys Weitz & Luxenberg, P.C., brings this

action against Defendants Our Lady of Perpetual Help Parish ("Parish") and Our Lady of

Perpetual Help Church ("Church") and as and for Plaintiff's Verified Complaint in the above

entitled action against the Defendants herein, respectfully shows to this Court, and alleges upon

information and belief, the following:

## INTRODUCTION

1.  This action arises out of the sexual abuse of the Plaintiff by Father McDonald, a priest at

the Defendant Church in the Defendant Parish, owned, supervised, controlled, and/or operated by

the Roman Catholic Diocese of Rockville Centre, while Plaintiff was a minor.

2.  Defendant Parish is a parish in the County of Suffolk and Defendant Church is a church

in the County of Suffolk. Defendants Parish and Church are owned and run by the Roman

Catholic Diocese of Rockville Centre and continue to operate and serve parishioners.

3.  In or around the age of approximately 12 years old Plaintiff attended Defendant Church

in Defendant Parish where Plaintiff was repeatedly sexually abused by Father McDonald.

2

4.    Plaintiff's claims are timely under the provisions of the Child Victims Act creating a now two-year window, beginning August 14, 2019, within which to file previously barred claims regarding childhood sexual abuse (see CPLR 214-g).

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to CPLR §301 because Defendants either reside or conduct business in the State of New York. Alternatively, this Court has jurisdiction pursuant to CPLR §302 because the tortious acts alleged herein took place within the State of New York, County of Suffolk.

6.    This Court has jurisdiction over this action because the amount of damages Plaintiff seeks exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

7.    Venue for this action is proper in this Court under CPLR §503 (a) in that the Defendants reside in and a substantial part of the events and omissions giving rise to this claim occurred in the County of Suffolk.

## PARTIES

8.    Plaintiff is an individual residing in County of Suffolk, New York. At all times material to this Complaint, Plaintiff was a resident of the State of New York.

9.    From 1981 through 1983 and for a period of time prior and subsequent thereto Plaintiff was a resident of the County of Suffolk, New York.

10.    Upon information and belief, the Roman Catholic Diocese of Rockville Centre filed for bankruptcy in 2020.

11.     Upon information and belief, at all relevant times, the Roman Catholic Diocese of Rockville Centre created, oversaw, managed, controlled, directed, and operated parishes or

3

Case 2:23-cv-05109-GRB-AYS Document 1-1 Filed 07/05/23 Page 4 of 26 PageID #: 9

churches of the Roman Catholic Diocese of Rockville Centre including Defendants Parish and Church.

12. Upon information and belief, at all relevant times, the Roman Catholic Diocese of Rockville Centre managed, supervised, employed, directed, and/or controlled priests, nuns, clergy, teachers, employees and seminary students assigned to work in parishes or churches of including Father McDonald.

13. Upon information and belief, at all relevant times, priests, nuns, clergy, teachers, employees and seminary students assigned to the Roman Catholic Diocese of Rockville Centre were agents, managers, directors, or employees of the Roman Catholic Diocese of Rockville Centre.

14. Upon information and belief, Defendant Parish is a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 210 S. Wellwood Ave., Lindenhurst, NY 11757.

15. Upon information and belief, Defendant Church is a religious corporation organized pursuant to the Religious Corporations Laws with its principal office at 210 S. Wellwood Ave., Lindenhurst, NY 11757.

16. Upon Information and belief, at all relevant times, Defendants Parish and Church were and have been a Roman Catholic parish and church within and under the authority of the Roman Catholic Diocese of Rockville Centre, which created, oversaw, managed, controlled, directed, and operated Defendants Parish and Church.

17. Upon information and belief, at all relevant times, priests, nuns, clergy, teachers, employees and seminary students assigned to Defendants Parish and Church were agents,

4

Case 2:23-cv-05109-GRB-AYS   Document 1-1   Filed 07/05/23   Page 5 of 26 PageID #: 10

managers, directors, or employees of Defendants Parish and Church and the Roman Catholic Diocese of Rockville Centre.

## FACTS COMMON TO ALL CLAIMS

18.     Plaintiff and Plaintiff's family were parishioners of and attended Defendant Church when Plaintiff was a child.

19.     During the times relevant to the allegations set forth herein, the Roman Catholic Diocese of Rockville Centre was responsible for overseeing, managing, controlling, directing and operating Defendants Parish and Church.

20.     Father McDonald was a priest assigned by the Roman Catholic Diocese of Rockville Centre to Defendants Parish and Church.

21.     Through the position at, within, or for the Defendants, Father McDonald was put in direct contact with Plaintiff, a minor parishioner of Defendants Church and Parish.

22.     In approximately 1981, when Plaintiff was approximately 12 years of age, Father McDonald at Defendant Church first sexually abused Plaintiff. Upon information and belief, Father McDonald's assignment history is:  Ordination, 1967; associate pastor of the Church of St. Matthew, Dix Hills, NY; associate pastor, Church of St. Aloysius, Great Neck; associate pastor, Our Lady of Perpetual Help Church, Lindenhurst, NY; St. Joseph Church, Kings Park, NY; SS. Cyril and Methodius, Deer Park, NY; administrator, St. John the Evangelist, 1990; pastor, St. Matthew's, Dix Hills, NY, 2006.

23.     Father McDonald encountered Plaintiff through the position held at Defendant Church which allowed access to Defendant Church's minor parishioners, when Plaintiff was approximately 12 years of age, to sexually assault, sexually abuse, and/or have sexual contact with Plaintiff in violation of the laws of the State of New York.

5

Case 2:23-cv-05109-GRB-AYS Document 1-1 Filed 07/05/23 Page 6 of 26 PageID #: 11

24.     Father McDonald continued to repeatedly sexually abuse Plaintiff until approximately 1983.

25.     Upon information and belief, prior to 1981, before and as a priest, Father McDonald sought out positions and opportunities that permitted Father McDonald access to children for purposes including the grooming of them for sexual abuse and sexually abusing them.

26.     Upon information and belief, from 1981 through 1983, and for a period of time prior and subsequent thereto, Father McDonald engaged in activity uniquely attractive to children including mentoring and serving as an example to children by serving as a pastor at Our Lady of Perpetual Help Church.

27.     Grooming techniques utilized by Father McDonald included, but were not limited to, befriending Plaintiff and having the Plaintiff stay at Defendant Church after classes.

28.     From 1981 through 1983, Defendants Parish and the Church were aware or should have been aware that Father McDonald was having inappropriate contact and inappropriate relations with children, including but not limited to sexual contact with children, including Plaintiff.

29.     From 1981 through 1983, Father McDonald frequently sexually abused Plaintiff.

30.     From 1981 through 1983, Father McDonald's sexual abuse of the minor Plaintiff included, but was not limited to, rubbing his penis on Plaintiff's body and anus, forcing Plaintiff to perform oral sex on him, forcing oral sex on Plaintiff, and ejaculating on Plaintiff's body and in Plaintiff's mouth.

31.     At the time Plaintiff was subjected to this sexual abuse, Plaintiff was between the ages of 12-14 years old years old.

32.     Defendants Parish and Church had a duty to Plaintiff to ensure they were not offering unfettered opportunity for pedophiles to approach and assault students with ease. Defendants

6

Parish and Church knew and/or should have known that Father McDonald used his position as a priest at Defendant Church to harm minor children, including Plaintiff, and to create and foster relationships exploited for sexual abuse.

33.    At all times material hereto, Father McDonald was under the management, supervision, employ, direction, and/or control of the Defendants.

34.    The Defendants knew, and/or reasonably should have known, and/or knowingly condoned, and/or covered up, the inappropriate and unlawful sexual activities of Father McDonald who sexually abused Plaintiff.

35.    The Defendants had the responsibility to manage, supervise, control and/or direct priests, nuns, clergy, teachers, employees and seminary students who served in Defendant Parish and at Defendant Church, and specifically had a duty not to aid pedophiles such as Father McDonald by assigning, maintaining, and/or appointing them to positions with access to minors.

36.    The Defendants had a duty to the Plaintiff to ensure that Defendants did not offer opportunities for pedophiles to approach and assault vulnerable children. The Defendants knew and/or should have known that Father McDonald used the position at the Church to harm minor children, including Plaintiff, and to form an acquaintance that could be, and was, used to provide opportunities for sexual abuse.

37.    The problem of clergy sexual abuse of minors is well-documented throughout the history of the Roman Catholic Church. As far back as 1051, St. Peter Damian wrote in the *Book of Gomorrah* that clergy who defiled boys should be dismissed from holy orders.  (*Book of Gomorrah*, Ch. 6). Later St. Peter Damian wrote in his *Rule of the Monastery of Compludo*, about the punishment for "A cleric or monk who seduces youths or young boys" being public flogging, loss of tonsure and six months in jail, among other punishment.  In 1143 or 1144, a

7

professor at the University of Bologna named Gratian, known as the "Father of the Science of Canon Law," identified in his work the *Decretum*, the sexual sin by a priest that he called *stuprum pueri*, which is the sexual use of boys by an adult male.

38.     In 1961, the Vatican issued an instruction on the training of candidates for the priesthood, which was based upon the 1917 Code of Canon Law which stated:

> Advancement to religious vows and ordination should be barred to those who are afflicted with evil tendencies to homosexuality or pederasty, since for them the common life and priestly ministry would constitute serious dangers.

39.     This knowledge that Catholic clergy were sexually abusing minors continued through the middle ages and into recent history. In 1962, Pope John XXIII approved the publication *De Modo Procedendi in Causis Solicitationis*, a special procedural law for solicitation of sex in the confessional. This document contained prohibitions prohibiting clergy from having sex with minors under the age of sixteen. This document was distributed to every bishop and major religious superior in the world and was to be kept by them with the deepest secrecy.  In addition, this document reflected the Catholic Church's insistence on maintaining the highest degree of secrecy regarding the worst sexual crimes perpetrated by clergy.

40.     In 1947, a priest named Fr. Gerald Fitzgerald founded a religious order of priests called the Servants of the Paracletes. This religious order was founded in order to assist and treat Catholic clergy who experienced mental health problems. By 1952, Fr. Fitzgerald wrote that he had already treated a handful of priests who had sexually abused minors.  By 1963, the Paracletes were treating so many sexually abusive clergy that they developed a shorthand code, "code 3," to describe the offense. By 1966, the Paracletes began specializing in treatment of pedophile Catholic clergy.

8

41.     As early as 1971, the issue of sexual misconduct by clergy was being discussed in various Dioceses. Bishop Bernard Flanagan, Bishop of Worcester (Massachusetts) testified that as early as February 1971, there had been discussions about sexual misconduct among priests. According to Bishop Flanagan, "I think by 1971 I had heard of other cases of this type [sic] sexual misconduct and I knew that they were taking place in other dioceses too."

42.     That same year, Dr. Conrad Baars and Dr. Anna Terruwe presented a scholarly paper titled, *The Role of the Church in the Causation, Treatment and Prevention of the Crisis in the Priesthood,* to the 1971 Synod of Bishops at the Vatican and to the U.S. Conference of Catholic Bishops about psychiatric problems in Catholic clergy and how psychosexual immaturity manifested itself in heterosexual and homosexual activity. In 1990, psychologist and priest, A.W. Richard Sipe, published a study involving 1,500 priests that concluded that six (6) percent of priests were sexually involved with minors.

43.     In 1985, the public prosecution of a priest in Lafayette, Louisiana led to the creation of the 100-page document titled "*The Problem of Sexual Molestation by The Roman Catholic Clergy: Meeting the Problem in a Comprehensive and Responsible Manner*" by Fr. Thomas Doyle, Fr. Ray Mouton and Fr./Dr. Michael Peterson. This document was distributed to every Catholic Bishop and religious order ordinary in the United States. A significant portion of this document describes how significant the sexual abuse of children by Catholic clergy had become.

44.     As a direct result of Father McDonald's and the Defendants' and/or their agents', servants', employees' and/or staff's conduct and breaches of duties as described herein, Plaintiff endured sexual violence, sexual abuse, sexual assault and molestation and sustained serious and severe damage, harm and injuries. Plaintiff was caused to suffer severe and significant conscious pain and suffering, including physical suffering resulting in psychological suffering, emotional

9

suffering and distress and mental anguish and will continue to suffer great pain of mind and body, severe and permanent emotional distress and physical manifestations of emotional distress. Plaintiff has incurred and will continue to incur medical expenses and has incurred and will continue to incur other economic damages and losses, and will continue to experience and incur these damages and losses in the future.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION BASED ON
### STATUTORY LIABILITY FOR VIOLATIONS OF PENAL LAW
### AS AGAINST ALL DEFENDANTS

45.    Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 44 as if fully set forth herein.

46.   The conduct of Father McDonald and the Defendants, and/or their agents, servants, employees and/or staff, constituted violations of Article 130 of the Penal Law of the State of New York and/or its predecessor statutes including, but not limited to, violations of Penal Law Sections, Article 130 sections 130.20, 130.40, 130.45, 130.50, 130.52, 130.60, 130.65, 130.75 and 130.80.

47.   The conduct of Father McDonald and the Defendants and/or their agents, servants, employees and/or staff, constituted violations of Article 260 of the Penal Law of the State of New York and/or its predecessor statutes, including, but not limited to, Article 260 section 260.10.

48.   The conduct of Father McDonald and the  Defendants and/or their agents, servants, employees and/or staff, constituted violations of Article 115 of the Penal Law of the State of New York and/or its predecessor statutes, including, but not limited to, Article 115 sections 115.00 and 115.05.

Case 2:23-cv-05109-GRB-AYS   Document 1-1   Filed 07/05/23   Page 11 of 26 PageID #: 16

49.   The subject sexual offenses were committed by Father McDonald and the Defendants and/or their agents, servants, employees, and/or staff against the Plaintiff. The sexual abuse of children by adults, including those working in a church or school, is a foreseeable result of the Defendants' conduct.

50.   At all times material hereto, Father McDonald and the Defendants and/or their agents, servants, employees, and/or staff were willful, wanton, malicious, reckless and/or outrageous in their disregard for the rights and safety of Plaintiff and duties owed Plaintiff.

51.   As a direct and proximate result, Plaintiff has suffered and will continue to suffer the injuries described herein.

52.   By reason of the foregoing, the Defendants are liable to the Plaintiff, jointly, severally, and/or in the alternative, for compensatory damages, and for punitive damages, together with interest and costs.

**SECOND CAUSE OF ACTION**
**BASED ON NEGLIGENCE**
**<u>AS AGAINST ALL DEFENDANTS</u>**

53.   Plaintiff repeats and re-alleges each and every allegation in the Complaint as set forth in paragraphs 1 through 52 as if fully stated herein.

54.   While Plaintiff was under the care and supervision of the Defendants from approximately 1981 to 1983, the Defendants stood in the place of Plaintiff's parents (*in loco parentis*), and as such was responsible for, amongst other things, his care, well-being, and safety, and had a duty to protect Plaintiff from abuse, assault and other harms, including but not limited to sexual abuse. Plaintiff was entrusted by Plaintiff's parents, guardians and/or family to the control and supervision of the Defendants and Father McDonald. During the times that Plaintiff was entrusted to Defendants, Father McDonald was under the supervision and control of the

11

Defendants. The Defendants owe – and owed – a duty to children entrusted to them to act *in loco parentis* and to prevent foreseeable injuries.

55.   The Defendants at all relevant times represented or otherwise indicated to parishioners of Defendants Parish and Church that minor children would be physically safe while in the presence of priests, nuns, clergy, teachers and seminary students assigned to the Parish and Church.

56.   The Defendants entered into an express and/or implied duty to provide that when Plaintiff was a minor and left in the presence of a priest, nun, clergy, teacher or seminary student assigned to Defendants Parish and Church, Plaintiff would be kept reasonably safe and that priests or seminary students would not sexually abuse Plaintiff.

57.   The Defendants owed a duty of care to all minor persons, including Plaintiff, who were likely to come in contact with Father McDonald or were under the supervision of Father McDonald, to ensure that Father McDonald did not use Defendants' assigned positions to injure minors by sexual assault, sexual abuse, or sexual contact in violation of the laws of the State of New York.

58.   The Defendants knew or should have known of Father McDonald's propensity for the conduct which caused Plaintiff's injuries prior to, or about the time of the injuries' occurrence.

59.   The sexual abuse of children by adults, including priests, nuns, clergy, teachers and seminary students, is a foreseeable result of negligence.

60.   Father McDonald sexually assaulted, sexually abused and/or had sexual contact with Plaintiff while assigned to Defendants Parish and Church.

61.   The Defendants breached their duty to care to Plaintiff, failed to properly carry out their duty to stand in the place of Plaintiff's parents, and were negligent, careless and reckless in

12

Case 2:23-cv-05109-GRB-AYS Document 1-1 Filed 07/05/23 Page 13 of 26 PageID #: 18

failing to protect Plaintiff from abuse, assault and other harms, including but not limited to sexual abuse.

62. The Defendants had both actual and constructive notice of the sexual abuse of children in and arising out of the church setting in general, as well as the specific sexual abuse and molestation of minor children by Father McDonald and failed to institute appropriate measures to stop the abuse.

63. The Defendants knew and should have known Father McDonald posed a threat of sexual abuse to children.

64. The Defendants knew and should have known of the peculiar risk of sexual abuse of children in, and arising out of the church setting and failed to institute appropriate measures to prevent, identify, and safeguard against such abuse. The sexual abuse of children by adults, including those working in a church environment, is a foreseeable result of the Defendants' conduct.

65. At all times mentioned herein, the Defendants and/or their agents, servants and/or employees breached the above-stated duty in a negligent, reckless, willful and wanton manner, and caused Plaintiff to be sexually assaulted.

66. At all times material hereto, the Defendants and/or their agents, servants, employees, and/or staff were willful, wanton, malicious, reckless and/or outrageous in their disregard for the rights and safety of Plaintiff and duties owed Plaintiff.

67. As a direct and proximate result, Plaintiff has suffered and will continue to suffer the injuries described herein.

13

Case 2:23-cv-05109-GRB-AYS Document 1-1 Filed 07/05/23 Page 14 of 26 PageID #: 19

68. By reason of the foregoing, the Defendants are liable to the Plaintiff, jointly, severally, and/or in the alternative, for compensatory damages, and for punitive damages, together with interest and costs.

**THIRD CAUSE OF ACTION BASED ON**
**NEGLIGENT FAILURE TO WARN AND**
**IMPLEMENT CHILD SEXUAL ABUSE POLICIES**
**<u>AS AGAINST ALL DEFENDANTS</u>**

69. Plaintiff repeats and re-alleges each and every allegation in the Complaint as set forth in paragraphs 1 through 68 as if fully stated herein.

70. The Defendants had a duty to provide and maintain a reasonably safe church environment and/or school environment for their minor parishioners, including Plaintiff.

71. The Defendants failed to exercise reasonable care and take reasonable precautions for the safety and well-being of the minor parishioners attending Defendant Church including, but not limited to, Plaintiff.

72. The Defendants failed to safeguard and protect Plaintiff while Plaintiff was attending Defendant Church.

73. The Defendants were negligent in failing to adequately secure and monitor Defendants Parish and Church.

74. The Defendants failed to enact and/or enforce adequate written and/or verbal policies, procedures, training, curricula and regulations to educate on, identify, prevent, and stop the sexual abuse of children under their care. The sexual abuse of children by adults, including those working in a church environment, is a foreseeable result of Defendants' conduct.

75. At all times material hereto, the Defendants and/or their agents, servants, employees, and/or staff were willful, wanton, malicious, reckless and/or outrageous in their disregard for the rights and safety of Plaintiff and duties owed Plaintiff.

14

76. As a direct and proximate result, Plaintiff has suffered and will continue to suffer the injuries described herein.

77. By reason of the foregoing, the Defendants are liable to the Plaintiff, jointly, severally, and/or in the alternative, for compensatory damages, and for punitive damages, together with interest and costs.

## FOURTH CAUSE OF ACTION BASED ON
## NEGLIGENT HIRING
## AS AGAINST ALL DEFENDANTS

78. Plaintiff repeats and re-alleges each and every allegation in the Complaint as set forth in paragraphs 1 through 77 as if fully stated herein.

79. The Defendants had a duty to conduct appropriate and proper hiring and screening of those who may pose a risk of harm, including but not limited to sexual abuse, to minors, including minors who had been entrusted to their care, custody, supervision and control.

80. The Defendants were negligent, careless and reckless, in the manner in which they conducted their hiring and/or assignment of staff, including but not limited to Father McDonald, and hired and/or assigned priests such as Father McDonald who had a history of abusing those whom they were supposed to teach, care for, mentor and serve.

81. The Defendants knew or should have known of Father McDonald's propensity for the conduct that caused Plaintiff's injuries prior to, or about the time of, the injuries' occurrence. The Defendants negligently assigned Father McDonald with knowledge of his propensity for the type of behavior, which resulted in Plaintiff's injuries in this action or were negligent because they should have known of such propensity. The Defendants failed to adequately investigate Father McDonald's past and/or current history of sexual abuse and/or inappropriate conduct and behavior with children and/or risk factors for pedophilia and failed to administer the appropriate

15

tests/exams or ask the appropriate questions to determine whether Father McDonald posed a

potential risk for being a child sexual predator.

82.   The Defendants had a duty to prevent risks of harm which were known or which should

have been known, and to prevent their staff and/or priests from inflicting harm including but not

limited to sexual abuse upon the children who had been entrusted to them, including Plaintiff.

The sexual abuse of children by adults, including those working in a church and/or school

environment, is a foreseeable result of the Defendants' conduct.

83.    At all times material hereto, the Defendants and/or their agents, servants, employees,

and/or staff were willful, wanton, malicious, reckless and/or outrageous in their disregard for the

rights and safety of Plaintiff and duties owed Plaintiff.

84.    As a direct and proximate result, Plaintiff has suffered and will continue to suffer the

injuries described herein.

85.   By reason of the foregoing, the Defendants are liable to the Plaintiff, jointly, severally,

and/or in the alternative, for compensatory damages, and for punitive damages, together with

interest and costs.

### FIFTH CAUSE OF ACTION BASED ON
### NEGLIGENT SUPERVISION AND TRAINING
### AS AGAINST ALL DEFENDANTS

86.   Plaintiff repeats and re-alleges each and every allegation in the Complaint as set forth in

paragraphs 1 through 85 as if fully stated herein.

87.   The Defendants had a duty to adequately and properly supervise and train individuals

who they had hired and assigned to parishes and churches in a reasonably prudent fashion, to

identify those they hired who may pose a risk of harm, including, but not limited to, sexual

abuse.

16

Case 2:23-cv-05109-GRB-AYS Document 1-1 Filed 07/05/23 Page 17 of 26 PageID #: 22

88. The Defendants had a duty to adequately and properly supervise and train individuals who they had hired and assigned to parishes and churches in a reasonably prudent fashion, to prevent those hired from becoming a risk of harm, including, but not limited to, sexual abuse.

89. The Defendants had a duty to prevent known risks of harm, and to prevent their staff and/or priests from inflicting harm including, but not limited to, sexual abuse upon the children who had been entrusted to them, including Plaintiff.

90. The Defendants had a duty to adequately train and supervise individuals who they had hired and assigned to parishes and churches so as to ensure the safety and well-being of the children who had been entrusted to them, including Plaintiff.

91. The Defendants had a duty to adequately train and supervise individuals who they had hired and assigned to parishes and churches so as to ensure that they carried out their duties in a manner which reduced and/or eliminated the risk of harm, including, but not limited to, sexual abuse, to those who had been entrusted to their care, custody, supervision, and control, including Plaintiff.

92. The Defendants had a duty to adequately supervise individuals who they had hired and assigned to parishes and churches so as to ensure that they did not sexually abuse those who had been entrusted to their care, custody, supervision, and control, including Plaintiff.

93. The Defendants were negligent, careless and reckless in the manner in which they supervised individuals who they had hired and assigned to parishes and churches, including, but not limited to Father McDonald, in that they failed to prevent them from sexually abusing those who had been entrusted to their care, custody, supervision and control including but not limited to the Plaintiff. The sexual abuse of children by adults, including those working in a church or school environment, is a foreseeable result of Defendants' conduct.

Case 2:23-cv-05109-GRB-AYS   Document 1-1   Filed 07/05/23   Page 18 of 26 PageID #: 23

94. The Defendants were negligent, careless and reckless in their failure to properly train and supervise individuals who they had hired and assigned to parishes and churches so as to ensure that they were not sexually abusing the children or allowing the sexual abuse of children who were entrusted to their care, custody, supervision, and control, including Plaintiff. The sexual abuse of children by adults, including those working in a church or school environment, is a foreseeable result of the Defendants' conduct.

95. At all times material hereto, the Defendants and/or their agents, servants, employees, and/or staff were willful, wanton, malicious, reckless and/or outrageous in their disregard for the rights and safety of Plaintiff and duties owed Plaintiff.

96. As a direct and proximate result, Plaintiff has suffered and will continue to suffer the injuries described herein.

97. By reason of the foregoing, the Defendants are liable to the Plaintiff, jointly, severally, and/or in the alternative, for compensatory damages, and for punitive damages, together with interest and costs.

**SIXTH CAUSE OF ACTION BASED ON**
**NEGLIGENT RETENTION**
**<u>AS AGAINST ALL DEFENDANTS</u>**

98. Plaintiff repeats and re-alleges each and every allegation in the Complaint as set forth in paragraphs 1 through 97 as if fully stated herein.

99. The Defendants had a duty to conduct appropriate and proper retention practices to prevent the retention of those who may pose a risk of harm, including but not limited to sexual abuse, to minors, including minors who had been entrusted to their care, custody, supervision and control.

18

Case 2:23-cv-05109-GRB-AYS   Document 1-1   Filed 07/05/23   Page 19 of 26 PageID #: 24

100.  The sexual abuse of children by adults, including clergy and teachers, is a foreseeable result of negligence. The Defendants negligently retained Father McDonald in a position with access to children and knew or should have known that could cause harm, which Plaintiff would not have been subjected to, had the Defendants taken reasonable care.

101.  The Defendants had a duty to prevent known and knowable risks of harm, and to prevent individuals who they had hired and assigned to parishes and churches from inflicting harm, including, but not limited to, sexual abuse upon the children who had been entrusted to them, including Plaintiff.

102.  The Defendants were negligent, careless, and reckless, in the manner in which they conducted their retention of individuals who they had hired and assigned to parishes and churches, including, but not limited to, Father McDonald, and retained individuals who they had hired and assigned to parishes and churches such as Father McDonald who had a known or knowable history of abusing those whom they were supposed to teach, care for, mentor and serve and/or presented a risk of sexual abuse.

103.  In failing to timely remove Father McDonald from working with children, or terminate the employment of Father McDonald, the Defendants failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances. The sexual abuse of children by adults, including those working in a church or school environment, is a foreseeable result of the Defendants' conduct.

104.  At all times material hereto, the Defendants and/or their agents, servants, employees, and/or staff were willful, wanton, malicious, reckless and/or outrageous in their disregard for the rights and safety of Plaintiff and duties owed Plaintiff.

19

Case 2:23-cv-05109-GRB-AYS   Document 1-1   Filed 07/05/23   Page 20 of 26 PageID #: 25

105.  As a direct and proximate result, Plaintiff has suffered and will continue to suffer the injuries described herein.

106.  By reason of the foregoing, the Defendants are liable to the Plaintiff, jointly, severally, and/or in the alternative, for compensatory damages, and for punitive damages, together with interest and costs.

**SEVENTH CAUSE OF ACTION BASED ON
BREACH OF FIDUCIARY DUTY
<u>AS AGAINST ALL DEFENDANTS</u>**

107.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 106 as if fully set forth herein.

108.  While he was a minor, Plaintiff was entrusted by Plaintiff's parents, guardians or family to the control and supervision of Father McDonald and the Defendants that supervised and controlled Father McDonald.

109.  There exists a fiduciary relationship of trust, confidence, and reliable between Plaintiff and Father McDonald and the Defendants. Plaintiff and Plaintiff's parents/guardians had confidence in and reasonably relied upon Defendants' knowledge and expertise in managing church environments and church administration to properly hire, train, supervise and retain staff/personnel so that Plaintiff would be safe. This relationship is based on the entrustment of the Plaintiff while Plaintiff was a minor child to the care and supervision of the Father McDonald and the Defendants. This entrustment of the Plaintiff to the care and supervision of the Defendants while the Plaintiff was a minor child, required these Defendants to assume a fiduciary relationship and to act in the best interests of the Plaintiff and to protect Plaintiff due to his age and vulnerability.

Case 2:23-cv-05109-GRB-AYS    Document 1-1    Filed 07/05/23    Page 21 of 26 PageID #: 26

110. Pursuant to their fiduciary relationship, the Defendants were entrusted with the well-being, care, and safety of Plaintiff.

111. Pursuant to their fiduciary relationship, the Defendants assumed a duty to act in the best interests of Plaintiff.

112. The Defendants breached their fiduciary duties to Plaintiff.

113. At all times material hereto, the Defendants were willful, wanton, malicious, reckless, and outrageous in their disregard for the rights and safety of Plaintiff.

114. As a direct result of said conduct, Plaintiff has suffered injuries and damages described herein.

115. By reason of the foregoing, the Defendants, jointly, severally and/or in the alternative, are liable to Plaintiff for compensatory damages and punitive damages, together with interest and costs.

**EIGHTH CAUSE OF ACTION BASED ON
STATUTORY LIABILITY
FOR FAILING TO REPORT ABUSE
<u>AS AGAINST ALL DEFENDANTS</u>**

116. Plaintiff repeats and re-alleges each and every allegation in the Complaint as set forth in paragraphs 1 through 115 as if fully stated herein.

117. Father McDonald and the Defendants, by and through their agents, servants, employees and/or staff, when acting in a school-related capacity, were "persons and officials . . . required to report or cause a report to be made in accordance with this title when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child," or were "persons in charge of such institution, school, facility . . . or [a] designated agent" required to "be responsible for all subsequent administration necessitated by the report." N.Y. Soc. Serv. Law § 413 (1) (a) & (b).

21

Case 2:23-cv-05109-GRB-AYS Document 1-1 Filed 07/05/23 Page 22 of 26 PageID #: 27

118. Father McDonald and the Defendants, by and through their agents, servants, employees and/or staff, when acting in a school-related capacity, were mandated reporters under N.Y. Soc. Serv. Law § 413 as the organization that oversaw, managed, controlled, and directed the Parish and Church . At all relevant times, school administrators and directors, school officials, instructors, nurses, and other mandatory reporters at the Parish and Church, were agents, servants, employees and/or staff of the Defendants and under the management, supervision, employ, direction and/or control of the Defendants.

119. Father McDonald and the Defendants, by and through their agents, servants, employees and/or staff, when acting in a school-related capacity, were mandated reporters under N.Y. Soc. Serv. Law §§ 413 (1)(a) responsible for overseeing, managing, controlling, and directing its school and directors, school officials, instructors, nurses, and other mandatory reporters employed to teach classes for children in the Parish and at the Church, and as such, was required to report or cause a report to be made and/or was responsible for all subsequent administration necessitated by any report of known or reasonably suspected child abuse or maltreatment that allegedly occurred at the Church. N.Y. Soc. Serv. Law § 413 (1)(a) & (b).

120. Father McDonald and other agents, servants, employees and/or staff of the Defendants specifically, were acting in a school-related capacity via their professional or official capacities as administrators and directors, officials and other mandatory reporters when they learned, had reasonable grounds to suspect, or received any report that Plaintiff was repeatedly sexually abused by Father McDonald.

121. Father McDonald and the Defendants, by and through their agents, servants, employees and/or staff, when acting in a school-related capacity, violated mandated statutory reporting duties under N.Y. Soc. Serv. Law §§ 413(a) and (b), when the Defendants knew,

Case 2:23-cv-05109-GRB-AYS Document 1-1 Filed 07/05/23 Page 23 of 26 PageID #: 28

and/or reasonably should have known, and/or knowingly condoned, and/or covered up, the inappropriate and unlawful sexual activities of Father McDonald, including the sexual abuse of Plaintiff, without reporting or causing a report to be made, to the statewide central register or local child protective services pursuant to N.Y. Soc. Serv. Law §413(b), §415. The sexual abuse of children by adults, including those working in a church or school environment, is a foreseeable result of the Defendants' conduct.

122. The Defendants, when acting in a school-related capacity, acted knowingly and willfully, and with wanton, malicious, reckless and/or outrageous disregard for the rights and safety of the Plaintiff and other students in failing to report Father McDonald's known, knowable or reasonably suspected abuse and maltreatment of the Plaintiff to proper authorities under N.Y. Soc. Serv. Law §413(b), §415.

123. By reason of the foregoing, the Defendants are "civilly liable for the damages proximately caused" under N.Y. Soc. Serv. law §420(2) by the Defendants' failure to report or cause a report to be made related to the known or reasonably suspected sexual abuse committed by Father McDonald through his position at, within, or for the Defendants under §420.

124. At all times material hereto, the Defendants and/or their agents, servants, employees, and/or staff, when acting in a school-related capacity, were willful, wanton, malicious, reckless and/or outrageous in their disregard for the rights and safety of Plaintiff and duties owed Plaintiff.

125. As a direct and proximate result, Plaintiff has suffered and will continue to suffer the injuries described herein.

23

Case 2:23-cv-05109-GRB-AYS   Document 1-1   Filed 07/05/23   Page 24 of 26 PageID #: 29

124. By reason of the foregoing, the Defendants are liable to the Plaintiff, jointly, severally, and/or in the alternative, for compensatory damages, and for punitive damages, together with interest and costs.

**WHEREAS** the Plaintiff, demands judgment against the Defendants on each cause of action as follows:

A.   Awarding compensatory damages, jointly and severally, in an amount to be proved at trial, but in any event in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction; extent permitted by law;

B.   Awarding punitive damages to the extent permitted by law;

C.   Awarding costs and fees of this action, including attorneys' fees to the extent permitted by law;

D.   Awarding prejudgment interest to the extent permitted by law;

E.   Awarding such other and further relief as to this Court may seem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES**

Dated: July 20, 2021
      New York, New York

Respectfully Submitted,

_____
Jerry Kristal
WEITZ & LUXENBERG, P.C.
**Attorneys for Plaintiff**
700 Broadway
New York, New York 10003
(856) 406-3999

24

Case 2:23-cv-05109-GRB-AYS Document 1-1 Filed 07/05/23 Page 25 of 26 PageID #: 30

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

Lenard Degaetano,

                    *Plaintiff*,

         v.

Our Lady of Perpetual Help Parish and Our
Lady of Perpetual Help Church,

                              *Defendants.*

Index No.

**VERIFICATION**

JERRY KRISTAL, the undersigned, am an attorney admitted to practice in the Courts of New York State, and say that:

I am the attorney of record or of counsel with the attorney(s) of record for the Plaintiff.

I have read the annexed SUMMONS AND VERIFIED COMPLAINT and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief. As to those matters, I believe them to be true. My belief, as to those matters therein not stated upon knowledge is based upon the following:

Investigations and/or discussions held with the Plaintiff and any documents in the file.

The reason I make this verification instead of the Plaintiff is because said Plaintiff resides outside the county from where your deponent maintains an office for the practice of law.

Dated: July 20, 2021
         New York, NY

_____

JERRY KRISTAL

25

INDEX NO. 613731/2021
RECEIVED NYSCEF: 07/20/2021

Index No.                                                      Year 2021

SUPREME COURT STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------------------------------------------------------------

Lenard Degaetano,

                                        Plaintiff,


                    -against-

Our Lady of Perpetual Help Parish and Our Lady of Perpetual Help Church,


                                        Defendants.

---

### SUMMONS AND VERIFIED COMPLAINT

---


### WEITZ & LUXENBERG, P.C.

Attorneys for Plaintiff

700 Broadway
New York, New York 10003
(856) 406-3999

---

To:   All Parties

---